UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

Etan Leibovitz,                                            :

                    Plaintiff,                             :     **Civil Action No. 14-cv-7106**
                                                                 **(KAM) (LB)**

            -against-

                                                           :

                                                           :  FILED
                                                              IN CLERK'S OFFICE
THE CITY OF NEW YORK, a municipal entity;                     US DISTRICT COURT E.D.N.Y.
NEW YORK CITY POLICE OFFICERS
BRENDAN ANDERSON (Tax Reg# 942951),                           ★  MAY 20 2016  ★
CHRISTOPHER RYAN (Tax Reg# 945303),
DEL VILLAR (Tax Reg# 941640).                                 BROOKLYN OFFICE
                                  :

                        Defendants.
------------------------------------------------------------------------X


**FOURTH AMENDED VERIFIED COMPLAINT**


Etan Leibovitz, Pro Se
83-19 141St #207
Briarwood, NY 11435

**TABLE OF CONTENTS**

*Page*

NATURE OF ACTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

NOTICE OF CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4


STATEMENT OF FACTS . . : . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      A.  **November 19th, 2014, Arrest and Arraignment** . . . . . . . . . . . . . . . . . . . . 6

      B.  **Plaintiff Files Complaints with CCRB and Internal Affairs** . . . . . . . . . . . 14

      C.  **December 11, 2014, AP6- Calendar, The PEOPLE Offer Plaintiff an ACD**

          . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

      D.  **Complaint 2014-39042** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

      E.  **Complaint 2015-11474** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23




FIRST CAUSE OF ACTION
    (Monell/ 42 U.S.C. § 1983 Claim Against Defendant
    City Of New York For The Actions of the NYPD) . . . . . . . . . . . . . . . . . . . . . . . . 29


SECOND CAUSE OF ACTION
    (Monell/ 42 U.S.C. § 1983 Claim Against Defendant
    City Of New York For The Actions of the NYPD) . . . . . . . . . . . . . . . . . . . . . . . . 36

THIRD CAUSE OF ACTION
    (Violation of Plaintiff's First and Fourteenth Amendments
    to the United States Constitution Against Police Officers
    Brendan Anderson, Christopher Ryan and Del Villar . . . . . . . . . . . . . . . . . . . . . . . . 38

FOURTH CAUSE OF ACTION
    (DEPRIVATION OF RIGHTS UNDER THE FOURTH
    AMENDMENT AND 42 U.S.C. § 1983 FALSE
    IMPRISONMENT AND FALSE ARREST
    Against Police Officers Brendan Anderson, Christopher
    Ryan and Del Villar) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

FIFTH CAUSE OF ACTION
    (42 U.S.C. § 1983; Denial of Due Process
    Under the Fifth and Fourteenth Amendments;
    Malicious Prosecution and Deprivation of Liberty
    Under the Fourth and Fourteenth Amendments;
    Defendants Brendan Anderson, Christopher Ryan
    and Del Villar) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

SIXTH CAUSE OF ACTION
    (DEPRIVATION OF RIGHTS UNDER THE FOURTEENTH
    AMENDMENT AND 42 U.S.C. § 1983
    Against Police Officers Brendan Anderson,
    Christopher Ryan and Del Villar) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42

SEVENTH CAUSE OF ACTION
    (*RESPONDEAT SUPERIOR* LIABITLITY CITY OF NEW YORK
    FOR STATE LAW VIOLATIONS COMMON LAW CLAIM . . . . . . . . . . . . . . . . . 44

EIGHTH CAUSE OF ACTION
    (Negligent Hiring, Training and Supervision Under State Law;
    RESPONDEAT *SUPERIOR* Defendant City of New York) . . . . . . . . . . . . . . . . 44

NINETH CAUSE OF ACTION
    (Violation of Article I, Section 8 of the New York Constitution
    Against Police Officers Brendan Anderson,
    Christopher Ryan and Del Villar) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

TENTH CAUSE OF ACTION
    (FALSE IMPRISONMENT AND FALSE ARREST
    UNDER NEW YORK STATE LAW
    Against Police Officers Brendan Anderson, Christopher Ryan and Del Villar). . . . . . . 46

ELEVENTH CAUSE OF ACTION
    (Malicious Prosecution under State Law;
    Against Police Officers Brendan Anderson,
    Christopher Ryan and Del Villar) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47


TWELFTH CAUSE OF ACTION
    (ASSAULT AND BATTERY COMMON LAW CLAIM
    Against Police Officers Brendan Anderson,
    Christopher Ryan and Del Villar) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .48


THIRTEENTH CAUSE OF ACTION
    (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
    COMMON LAW CLAIM Against City and Police Officers
    Brendan Anderson, Christopher Ryan and Del Villar) . . . . . . . . . . .. . . . . . . . . . . . . 50

FOURTEENTH CAUSE OF ACTION
    (MALICIOUS ABUSE OF PROCESS
    Against Police Officers Brendan Anderson, Christopher Ryan and Del Villar) . . . . . . . 50


DAMAGES DEMAND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

Etan Leibovitz,

             Plaintiff,

               -against-

THE CITY OF NEW YORK, a municipal entity;
NEW YORK CITY POLICE OFFICERS
BRENDAN ANDERSON (Tax Reg# 942951),
CHRISTOPHER RYAN (Tax Reg# 945303),
DEL VILLAR (Tax Reg# 941640);

                         Defendants.
------------------------------------------------------------------------X

**FOURTH AMENDED
VERIFIED COMPLAINT
Civil Action No. 14-cv-7106
(KAM) (LB)**

**JURY TRIAL
DEMANDED**

Plaintiff Etan Leibovitz ("Plaintiff") respectfully alleges, upon information and belief as follows:

## NATURE OF ACTION

1. This civil rights action is filed by the plaintiff, Etan Leibovitz, an individual activist and "citizen journalist", who seeks relief from the defendants' policies, practices, customs and actions in violation of his rights secured by the Civil Rights Acts of 1871, Title 42 U.S.C. § 1983 and 1988, by the United States Constitution, including the First, Fourth and Fourteenth Amendment, Article I Section 8 of the New York Constitution, state and common law.  Individuals have the right to record the public activities of police officers, and such recording helps ensure the police remain accountable to the public.  The New York City Police Department's ("NYPD") widespread policy, practice and custom of arresting, threatening to arrest or otherwise interfering with individuals who attempt to record police performing their official duties infringes on individuals' First Amendment rights.

2.  This lawsuit seeks to hold the Defendant CITY OF NEW YORK liable for the above misconduct under the federal civil rights statute, 42 U.S.C. § 1983, and Monell v. Dept. Of Social Services, 436 U.S. 658 (1978). Leibovitz here asserts two Monell claims.

3.  The first Monell claim challenges the constitutionality of the NYPD's policy, practice and custom of interfering with the right of individuals to film, photograph, videotape, or record (collectively, "record") NYPD members performing their official duties in public places. In particular, this lawsuit challenges retaliatory measures taken by NYPD officers Brendan Anderson, Christopher Ryan and Del Villar against the Plaintiff, Etan Leibovitz, for attempting to record them while they were conducting a car search on the south west corner on 84th Drive and Queens Blvd. As Plaintiff will demonstrate, the NYPD police officers, as a matter of policy, provided false statements in the Criminal Complaint, misled the Court and Queens District Attorney's Office in order to cover up their unlawful behavior. In the case where such misconduct was exposed, these agencies took no disciplinary action against the offending employees, thereby encouraging future constitutional violations to occur.

4.  The second Monell claim challenges the constitutionality of the NYPD's policy, practice and custom of investigating their own ("Blue Wall"). In particular, this lawsuit challenges and exposes the systemic problem due to issues inherent in the overall system. On November 28, 2014, Plaintiff Etan Leibovitz filed a complaint with Internal Affairs, complaint number 2014-39042, against the three arresting police officers from the 107th precinct, Defendants Brendan Anderson, Christopher Ryan and Del Villar. On January 7th, 2015, the NYPD Queens South office informed Mr. Leibovitz that Sergeant Busby, from the 107th Precinct, would be investigating his complaint. Mr. Leibovitz expressed his concerns inquiring why the NYPD is allowed to investigate itself and decide if the actions of its own employees are justified. Mr. Leibovitz was told it is a standard NYPD policy.

5.  The Plaintiff seeks recovery and to hold personally accountable three NYPD Police Officers, Defendants ANDERSON, RYAN and DEL VILLAR who acted in concert in violating Plaintiff's constitutional rights and are named as defendants in their individual as well as their official capacities.

6. Mr. Leibovitz seeks $1.5 million in actual damages, $3 million in punitive damages, equity relief in the form of injunctive and declaratory relief, an award of costs, interest and pro se fees, and such other and further relief as this Court deems just and proper for the misconduct that deprived him of the joys of living as a free person. This lawsuit seeks this Court's strong hand to finally put an end to the pervasive misconduct of the NYPD. Mr. Leibovitz plans to donate this money to help others.

## JURISDICTION AND VENUE

7. This action is brought pursuant to the First, Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. §1983, §1988, and under the common law of the State of New York.

8. This court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a), and under 28 U.S.C. § 1367, which provides for supplemental jurisdiction over claims which arise under New York state law.

9. In addition, this Court has original jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) to redress the deprivation, under color of state law, of any right, privilege, or immunity secured by the Constitution of the United States.

10. Venue is this District is proper under 18 U.S.C. § 1391(b) and (c) in that Defendant CITY OF NEW YORK is administratively located within the Eastern District of New York, and the events giving rise to this claim occurred within the boundaries of the Eastern District of New York.

11. Declaratory relief is available pursuant to 28 U.S.C. §§2201 and 2202.

## JURY TRIAL DEMANDED

12. Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## NOTICE OF CLAIM

13. On December 3rd, 2014 and November 7th, 2015, Plaintiff timely filed a Notice of Claim with the Comptroller of the City of New York, setting forth the facts underlying Plaintiff's claim against Police Officers Brendan Anderson, Christopher Ryan and Del Villar.

14. The CITY assigned a claim number to Plaintiff's claim, and Plaintiff was not subjected to an examination pursuant to N.Y Gen. Mun. L. Sec. 50-h.

15. Pursuant to New York General Municipal Law § 50-e et seq., at least 30 days have elapsed since the service of notices of claim, and to date, no answer has been received by Plaintiff and no compensation has been offered by Defendant CITY in response to this claim.

16. This action has been commenced within one year and ninety days of the date of occurrence of the events giving rise to this Complaint.

17. Plaintiff has duly complied with all the conditions precedent to the commencement of this action.

## PARTIES

18. At all times relevant to this action, Plaintiff Etan Leibovitz was a resident of Queens, County, New York.  He is currently a resident of Queens County, New York.  Plaintiff is a full time activist and "citizen journalist".

19. Defendant the City of New York ("CITY") is a municipality organized and existing under the laws of the State of New York and is a resident of the Eastern District of New York.  At all relevant times, the CITY, acting through the NYPD was responsible for the policy, practice, supervision, implementation, and conduct of police officers within the NYPD and was responsible for the appointment, training, supervision, and conduct of all police officers within the NYPD, including the defendants named in this complaint. In addition, at all relevant times, the CITY was responsible for enforcing the NYPD and for ensuring that the NYPD obey the laws of the United States and the State of New York.   Service on Defendant City can be effectuated on 100 Church Street, New York, NY 10007, 4th floor.

4

20. At all relevant times, Defendant Brendan Anderson ("ANDERSON") was a police officer for the NYPD acting in the capacity as agent, servant, and employee of New York City and within the scope of his employment as such, and under color of state law except when alleged herein that he acted beyond his scope. He is sued in his individual and official capacity. Service on Defendant ANDERSON can be effectuated at the 107th Precinct, located at 71-01 Parsons Boulevard, Flushing, NY 11365.

21. At all relevant times, Defendant Christopher Ryan ("RYAN") was a police officer for the NYPD acting in the capacity as agent, servant, and employee of New York City and within the scope of his employment as such, and under color of state law except when alleged herein that he acted beyond his scope. To formally initiate criminal proceedings against Plaintiff Leibovitz, Defendant RYAN, under oath, executed and caused to be filed a Criminal Complaint on November 19th, 2014 knowing it contained false statements. He is sued in his individual and official capacity. Service on Defendant RYAN can be effectuated at the 107th Precinct, located at 71-01 Parsons Boulevard, Flushing, NY 11365.

22. At all relevant times, Defendant Del Villar ("DEL VILLAR") was a police officer for the NYPD acting in the capacity as agent, servant, and employee of New York City and within the scope of his employment as such, and under color of state law except when alleged herein that he acted beyond his scope. He is sued in his individual and official capacity. Service on Defendant DEL VILLAR can be effectuated at the 107th Precinct, located at 71-01 Parsons Boulevard, Flushing, NY 11365.

23. Police officers Brendan Anderson, Christopher Ryan and Del Villar are referred to collectively herein as "NYPD Defendants".

24. All actions by Defendants, their officers, employees, or agents, described herein are taken under color of state law.

## STATEMENT OF FACTS

**A.**    **November 19th, 2014, Arrest and Arraignment**

25. On November 19, 2014, at approximately 4:00 pm, Plaintiff Etan Leibovitz was heading home from Jamaica Library, located at 89-11 Merrick Blvd, Jamaica, NY 11432, after spending a few hours working on his legal documents.

26. At approximately 4:30 pm, Etan Leibovitz was standing on a public sidewalk on the south west corner on 84th Drive and Queens Blvd after crossing the south east corner on 84th Drive and Queens Blvd.

27. Upon Mr. Leibovitz's arrival to the sidewalk on the south west corner on 84th Drive and Queens Blvd, he noticed, after observing the scene for a few minutes, the following:

    A. "Detainee's car" ("CAR") was the first car on the street, parked facing Queens Blvd, on 84th Drive, south west corner, and Queens Blvd;

    B. Parked several feet behind CAR (approximately 5 feet away facing Queens Blvd) was NYPD Defendants' "unmarked car" ("DCAR");

    C. The detainee was positioned with his back towards CAR, by the trunk, standing up and facing Defendant ANDERSON;

    D. Defendant ANDERSON was positioned facing the detainee approximately 4 feet away from detainee;

    E. Defendant RYAN was in the backseat searching through the CAR, positioned sideways, parallel to ground, with his head in the direction of the left backseat door.

    F. Defendant DEL VILLAR was by the passenger seat searching through the CAR positioned sideways parallel to ground, with his head in the direction of the driver's door;

    G. At no point upon Mr. Leibovitz's arrival was the detainee able to observe the search that was being conducted by Defendants DEL VILLAR and RYAN in the CAR;

    H. At this point Mr. Leibovitz was positioned approximately 10 to 12 feet away from the hood of the CAR standing on the sidewalk next to a female bystander. Mr. Leibovitz was not obstructing or interfering with the NYPD Defendants;

I.   Approximately twenty-five to thirty bystanders were scattered in the vicinity of the south west corner and the south east corner on 84th Drive and Queens Blvd.

28. When Defendant DEL VILLAR first noticed Mr. Leibovitz, he got out of the CAR and initiated a conversation with Mr. Leibovitz and asked him, "Can I help you?"

29. Mr. Leibovitz responded by stating, "No, I am just observing."

30. *At no point at that time* did Defendants DEL VILLAR, ANDERSON and RYAN state for Mr. Leibovitz to move.

31. As a result of the aforementioned initial conversation with Defendant DEL VILLAR, Mr. Leibovitz decided to exercise his First Amendment right and pulled out his cell phone and started to record Defendants ANDERSON, RYAN and DEL VILLAR conducting their search of CAR.

32. By recording the search, Mr. Leibovitz wanted to document that detainee's back was towards CAR while the search was being conducted.

33. By recording, Mr. Leibovitz intended to disseminate his video on Facebook in order to alert the general public how a police search was conducted.

34. Mr. Leibovitz was a concerned activist.

35. A few minutes later, when Defendant ANDERSON noticed that Mr. Leibovitz was now recording Defendants RYAN, DEL VILLAR and himself from 10 to 12 feet as opposed to just observing them from 10 to 12 feet, Defendant ANDERSON inquired what Mr. Leibovitz was doing.

36. Mr. Leibovitz responded to Defendant ANDERSON's inquiry by stating he was recording the search that was being conducted.

37. Defendant ANDERSON ordered for Mr. Leibovitz to move back.

38. Mr. Leibovitz then asked the NYPD Defendants where they would like for him to stand.

39. Mr. Leibovitz complied with Defendant ANDERSON's order.

40. Defendant ANDERSON intentionally ordered Mr. Leibovitz to move approximately 3-5 feet in the direction of Main Street which resulted in making it more difficult to observe and record Defendants DEL VILLAR, RYAN and ANDERSON.

41. A public phone booth was positioned by CAR.

42. After a few minutes of attempting to record NYPD Defendants' activity, Mr. Leibovitz wanted to document that detainee had his back to CAR as well as the crowd that was gathering.

43. While still videotaping, Mr. Leibovitz walked straight ahead on the side walk, approximately 20 feet, parallel to 84th road. [1]

44. Mr. Leibovitz then made a U-turn and headed back.

45. Upon heading back, Defendant DEL VILLAR stated to Mr. Leibovitz, " Hey Sir!!" to which Mr. Leibovitz stated, " I am just taping it. Cameras make officers accountable."

46. On information and belief, Defendant ANDERSON then responded by stating "You are going to make it to Hollywood" and then threw something at Mr. Leibovitz.

47. Mr. Leibovitz then responded by inquiring, "Did you just throw that at me, Sir?"

48. The female bystander stated to the NYPD Defendants, "Hey, that's not nice"

49. Mr. Leibovitz stated to the female bystander, "I know, did you see that?"

50. The female bystander stated to Mr. Leibovitz, "I saw it....I am on your side honey".

---

[1] The following sequence of events were recorded ¶¶ 42-57 using Mr. Leibovitz's smart phone.

51. Mr. Leibovitz then stated, "They are retaliating, should we have them arrested?  These pigs..."
    The female bystander states, "Yeah"

52. Mr. Leibovitz states,  " They think they run the streets here.  They work for us."

53. Defendant DE VILLAR then states as he walks towards Mr. Leibovitz, "Listen..."

54. Mr. Leibovitz, " She is my witness here..."

55. Defendant DE VILLAR continues, " I don't care what your witness is, and you can, you can film
    all you want..."

56. Mr. Leibovitz, " Ok"

57. Defendant DE VILLAR continues, "But you will not use bad language in front of me!!"

58. Defendant ANDERSON once again questioned Mr. Leibovitz why he was recording.

59. At this point, Mr. Leibovitz said, "I am exercising my First Amendment right. I have a right to
    record Police officers conducting what I believe is an unlawful search" , or words to that effect.

60. Defendant ANDERSON didn't take a liking and said, "You are a punk", or words to that effect.

61.  Mr. Leibovitz then responded to Defendant ANDERSON and said, "What? ...I know my rights,
    according to Glik vs Cunniffe."

62. The NYPD Defendants didn't take a liking that Mr. Leibovitz was questioning them and reciting
    the law.  In retaliation against Mr. Leibovitz's exercise of his constitutionally protected speech
    by recording them, the proceeding was  instituted  to interfere with, and chill, the exercise of free
    speech and association, and intentionally, maliciously with a deliberate indifference.

63. At this point Defendant ANDERSON told Mr. Leibovitz to leave.

64. Mr. Leibovitz was required to choose between surrendering his First Amendment right to record the action unfolding on the street before him or risking an unlawful arrest, bodily injury inflicted by law enforcement officials if he continued recording and exercising his First Amendment rights.

65. Mr. Leibovitz chose to continue recording, putting his liberty and physical safety at risk.

66. Mr. Leibovitz responded by stating he has every right to record.

67. As a result, NYPD Defendants bum rushed Mr. Leibovitz.

68. At no point did the NYPD Defendants state for Mr. Leibovitz to put his hands behind his back.

69. As the NYPD Defendants initiated effectuating the arrest, Mr. Leibovitz asked the NYPD Defendants what their probable cause was to arrest him.

70. At this point Mr. Leibovitz was unable to record what was transpiring.

71. Defendant ANDERSON said, "Oh no, I have a cut now, we have you for assault."

72. As a result of the effectuation of Mr. Leibovitz's unlawful arrest, Mr. Leibovitz was handcuffed and his cell phone was unlawfully confiscated for evidence.

73. Mr. Leibovitz did not resist the arrest nor did **he assault anyone**.

74. The NYPD Defendants' actions were motivated and substantially caused by Mr. Leibovitz's attempt to record the events.

75. Mr. Leibovitz was placed in the back seat, directly behind the passenger seat of DCAR.

76. At approximately 4:45 pm, Mr. Leibovitz was arrested.

77. Upon entering DCAR, Mr. Leibovitz challenged the NYPD Defendants by asking once again on what grounds they had a right to violate his First Amendment right. Mr. Leibovitz further stated that he will see them in Federal Court.

78. For approximately five minutes Mr. Leibovitz cited case law, enforced the general public's frustration with the NYPD and their abuse of power.

79. Defendant RYAN reacted by calling Mr. Leibovitz Johnny Cochran.

80. Mr. Leibovitz then questioned the NYPD Defendants what he is being charged with.

81. At this point the NYPD Defendants said one after the other "Do I hear anything?" starting with Defendant RYAN, then Defendant DEL VILLAR and Defendant ANDERSON.

82. Mr. Leibovitz then stated "Please add as many charges as you want, heck even hit me, make things up but I will let you know there are people in the crowd recording this. You are going to look really stupid if you erase my recording from my phone", or words to that effect.

83. Defendant RYAN said, "How will they ever know if you recorded", and then smiled.

84. A few minutes later, a law enforcement undercover car arrived at the scene making a left turn from Queens Blvd onto 84th Rd.

85. An unidentified NYPD supervisor (hereinafter "Supervisor") got out of the car and arrived at the scene.

86. The NYPD Defendants and Supervisor assembled a few feet away from DCAR and conversed for a few minutes.

87. Upon the conclusion of NYPD Defendants and Supervisor's discussion, Supervisor addressed Mr. Leibovitz by asking for his name.

88. Mr. Leibovitz stated his name to Supervisor and then asked Supervisor if he was aware that the NYPD Defendants violated his First Amendment rights.

89. Supervisor said, "We have you for disorderly conduct, resisting arrest and OGA.", or words to that effect.

90. Mr. Leibovitz said, "We have here an unlawful arrest. I will be defending myself and I will put all of you on the stand and expose you. Are you guys still aware of our First Amendment rights? You guys do know we the general public can record you officers to make you guys accountable, are you guys familiar with Glik vs Cunniffe? What just happened now was complete abuse of power.", or words to that effect.

91. A few minutes later, Mr. Leibovitz attempted to yell out his phone number to a witness who was recording from the corner of the south east corner by 84th Road and Queens Blvd., however Defendant RYAN immediately pulled Mr. Leibovitz and told him to shut up.

92. The NYPD Defendants then transported Mr. Leibovitz to the 107th precinct.

93. Approximately thirty to forty witnesses observed the aforementioned incident and arrest.

94. On information and belief, approximately 3- 4 witnesses recorded the incident from the south east corner on 84th Road and Queens Blvd.

95. At approximately 5:21 pm, Mr. Leibovitz was confined in a holding cell, at the 107th precinct, located at 71-01 Parsons Blvd, Flushing, NY 11365.

96. While at the 107th precinct, Mr. Leibovitz was fingerprinted and his mug shot taken.

97. On November 19th, 2014, sometime between 5:00 pm to 8:59 pm, the NYPD Defendants acting in concert, lied to the Queens District Attorney's Office (hereinafter "QDAO") by providing false statements with regards to what transpired during the arrest of Mr. Leibovitz on November 19th, 2014, to initiate criminal proceedings against him.

98. To formally initiate such proceedings, Defendant RYAN, under oath, executed and caused to be filed a Criminal Complaint.

99. The complaint alleged that Defendant RYAN is informed by Defendant ANDERSON that at the above mentioned date, time and place of occurrence he conducted a car stop for a BMW with a defective taillight.

    A. Deponent further states that he is informed by police officer Anderson that upon conducting an investigation into the stopped vehicle he observed the Defendant Etan M. Leibovitz approach said vehicle from the sidewalk and that he observed the defendant standing in close proximity behind his partner, police officer (Defendant) Del Villar (Tax Reg#941640).

    B. Deponent further states that he is informed by police officer Anderson that he asked the defendant to step back multiple times from police officer Del Villar and that the defendant (Etan Leibovitz) refused.

    C. Deponent further states that he is informed by police officer Anderson that the defendant began to yell and curse causing a large crowd to gather and that upon requesting for identification the defendant refused.

    D. Deponent further states that he is informed by police officer Anderson that when he was attempting to place handcuffs on the Defendant the Defendant flailed his arms and grabbed police officer Anderson's hand and lunged forward into a metal gate striking police officer Anderson's hand onto said metal gate in an attempt to avoid being handcuffed and placed under arrest.

    E. Deponent further states that he is informed by Police Officer Anderson that the Deponent stated in sum and substance, I do this all the time. I'm going to sue you, I sue cops all the time. Beat me up, I got Federal cases going.

    F. Deponent further states that he is informed by Police Officer Anderson that the above mentioned actions of the defendant caused him to sustain lacerations to his hand, substantial pain and that he was treated at a local area hospital for said injuries where he is awaiting X-Rays on his hand.

100.    The NYPD Defendants and Supervisor, with deliberate indifference to the truth, never attempted to procure any witnesses, speak to any witnesses or preserve any evidence (crowd's video recording).

101.     By knowingly signing the falsified Criminal Complaint, Defendant RYAN committed perjury.

102.     On November 20, 2014, at approximately 1:45 am, Mr. Leibovitz and another arrestee were transferred to Queens Central Booking.

103.     On November 19th, 2014, at approximately 4:45 pm, Defendant ANDERSON arrested Mr. Leibovitz. The QDAO filed a complaint, No. 2014QN068484, charging Mr. Leibovitz with:

   A.  One count of Assault in the second degree;
   B.  One count of Obstructing Governmental Administration in the second degree and with;
   C.  One count of Resisting Arrest.

104.     Based upon the false sworn complaint executed by Defendant RYAN, on November 20th, 2014, at approximately 10:45 am, in Queens Criminal Court, Mr. Leibovitz was arraigned on 2nd degree assault, obstructing government administration and resisting arrest. He pleaded not guilty. At approximately 10:55 am, after the QDAO argued for bail to be set for $100,000.00, Mr. Leibovitz's 18B lawyer, Pamela Jordan ("Ms. Jordan"), argued on his behalf.

105.     The Honorable Judge Armstrong released Mr. Leibovitz on his own recognizance. Mr. Leibovitz's next court appearance was scheduled for December 11, 2014, in AP6 for the Grand Jury.

## B.     Plaintiff Files Complaints with CCRB and Internal Affairs

106.     On November 26, 2014, at approximately 1:21:33 am, Mr. Leibovitz filed a complaint with CCRB applying their online form.

107.     On November 28, 2014, Mr. Leibovitz filed a complaint against the NYPD Defendants with Internal Affairs.

108.     Mr. Leibovitz spoke to Oleg Chemyavsky from the Legal Department at One Police Plaza.

109.     Mr. Chemyavsky opened a complaint with Internal Affairs and Mr. Leibovitz's complaint was assigned, complaint number 2014-39042 (hereinafter "complaint 2014-39042").

110.     On December 8th, 2014, Internal Affairs Detective "Daughtry" called Mr. Leibovitz and informed him that his case was forwarded to Chief of Department and provided him their contact number, (718) 834 3390.

111.     Upon calling Chief of Department, Mr. Leibovitz was notified that his case was referred to the Queens South office, (718) 969-8396.

## C.     December 11, 2014, AP6- Calendar, The PEOPLE Offer Plaintiff an ACD

112.     The QDAO represents the People of the State of New York in bringing charges against a suspect in a court of law.

113.     The QDAO has the responsibility and authority to investigate and prosecute crimes in the borough of Queens.

114.     The QDAO assigned Assistant District Attorney Matthew Sweet ("Mr. Sweet") to prosecute Mr. Leibovitz's case.

115.     Sometime in early December, 2014, Ms. Jordan informed Mr. Leibovitz that Mr. Sweet was prepared to take Mr. Leibovitz's case to the grand jury.

116.     Mr. Leibovitz informed Ms. Jordan that he is looking forward to the grand jury and testifying.

117.     On December 8th, 2014, Mr. Leibovitz provided the Queens Criminal Court and QDAO notice that he  filed a verified complaint, docket #14CV 7106 (KAM) (LB)  in the Eastern District Court against Defendants RYAN, DEL VILLAR and ANDERSON.

118.     A copy of the verified complaint was filed with the Queens Criminal Court and served on the QDAO on December 8th, 2015, a little after 3:30 pm.

119.     On December 11th, 2014, prior to going on the record, Ms. Jordan informed Mr. Leibovitz just outside the hallway by the elevators on the first floor in Queens Criminal Court that she spoke to Mr. Sweet once again.

120.     Ms. Jordan informed Mr. Leibovitz that Mr. Sweet informed her that he had Defendant ANDERSON come in to his office.

121.     Ms. Jordan further informed Mr. Leibovitz that Mr. Sweet stated in part "that he doesn't trust Defendant ANDERSON".

122.     On December 11th, 2014 in Queens Criminal Court, Mr. Leibovitz's case was called on the AP6 calendar in front of Judge Brandt.  The following transpired:
  A. The PEOPLE dropped Mr. Leibovitz's top charge, one count of assault in the second degree, a felony to one count of assault, in the third degree a misdemeanor;
  B. The PEOPLE then offered Mr. Leibovitz an ACD for which he respectfully declined;
  C. Ms. Jordan then informed the Court that Mr. Leibovitz wanted to proceed in this criminal matter pro se;
  D. Judge Brandt granted Mr. Leibovitz's his pro se application;
  E. The PEOPLE notified the Court that they are ready for trial;
  F. The next court date was scheduled for January 20, 2015 in AP1.

123.     On January 5th, 2015, Mr. Leibovitz filed and served an Omnibus Motion with Queens Criminal Court and QDAO requesting an Order for the following relief:
  a. For an appointment of a private investigator
  b. For the State of New York to incur costs for the private investigator (s) and expert witnesses
  c. The cost of a private investigator on average is $150.00 an hour plus expenses. A minimum of 150 hours would be needed to start this case.
  d. The cost of expert witnesses.
  e. Mr. Etan Leibovitz reserves the right to have all parties directly and indirectly involved in this case investigated in preparation for his defense.
  f. Bill of particulars: Pursuant to CPL 200.95, requiring the district attorney to file a bill of particulars with the court and to serve a copy thereof upon the defendant.

16

g. Discovery: Discovery pursuant to CPL Article 240.

h. Brady: Delivery to the defendant of all evidence favorable to the defendant under the authority of Brady v. Maryland, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

i. Lack of Probable Cause – Dunaway Hearing.

j. Statement suppression—Huntley hearing: Pursuant to CPL 710.20(3) and 710.70(1), suppressing the use in evidence at trial of any record or potential testimony reciting or describing a statement of the defendant made involuntarily, within the meaning of CPL 60.45, to a public servant engaged in law enforcement activity or to a person then acting under the direction of said public servant, or a hearing upon the issue pursuant to CPL 710.60(4).

k. Precluding the introduction of any evidence of the defendant at trial, on the grounds that the prosecution has not timely served a CPL 710.30 notice.

l. Sandoval: Pursuant to People v. Sandoval, 34 N.Y.2d 371, 357 N.Y.S.2d 849, 314 N.E.2d 413 (1974), prohibiting the district attorney from questioning the defendant for the purpose of impeaching the defendant's credibility, should the defendant choose to testify at trial, concerning any alleged previous bad acts, arrests or convictions in which the defendant may have been involved.

m. Pursuant to CPL 240.43, requiring the prosecutor to disclose any past uncharged acts that will be used at trial to impeach the defendant

n. Molineux: Prohibiting the prosecution from presenting, in its direct case or on rebuttal, any evidence that the defendant committed any other crime.

o. Subpoena Duces Tecum Hospital and Police Precinct

p. Renewal: Permitting the renewal of all motions.

124. In Mr. Leibovitz's request for Bill of Particulars, Discovery and Inspection, he requested the following:

A. State the name of the Hospital (s) that Police Officer Anderson went to seek medical attention and where his MRI was conducted.

B. Please state the date, time, location, and doctors or nurses or hospital staff that performed the medical attention for all the aforementioned dates of medical treatment.

C. Please provide how Police Officer Anderson entered the hospital (entrance and exit, room number where place of medical attention was provided).

D. Mr. Leibovitz needs the name of the hospital and location because he will be subpoenaing the Hospital(s) for medical records as well as video surveillance the day medical treatment was provided.

E. State the name of the detainee and provide his contact information that Police Officer Anderson was investigating on the day of Mr. Leibovitz arrest, November 19, 2014. Mr. Leibovitz will need this information because Mr. Leibovitz plans to subpoena the detainee as a witness.

125. On January 7th, 2015, the Queens South office informed Mr. Leibovitz that Sergeant Busby,

17

from the 107th Precinct, would be investigating his complaint 2014-39042.

126. Mr. Leibovitz expressed his concerns inquiring why the NYPD is allowed to investigate itself and decide if the actions of its own employees are justified.

127. Mr. Leibovitz was told it is a standard NYPD policy.

128.   The following two weeks, Mr. Leibovitz called the 107th Precinct several times, leaving several messages for Sergeant Busby to call him at his earliest convenience.

## January 20th, 2015, AP1 Calendar

129. In the morning of January 20th, 2015, Mr. Leibovitz's case was called on the AP1 calendar in front of the Honorable Donna M. Golia. Prosecuting on behalf of the PEOPLE was ADA Kevin Fogarty. The following transpired:

   A. Judge Golia assigned Mr. Stephen Gargiulo as legal advisor for Mr. Leibovitz;
   B. Judge Golia ordered the PEOPLE to respond to Mr. Leibovitz's Omnibus motion by February 10, 2015;
   C. The Honorable Judge Golia refused to sign Mr. Leibovitz's 5 subpoenas which would have ordered (1) the NY Police Department and (2) 107 Precinct provide video surveillance from the 107 Precinct the day of the arrest, November 19, 2014, as well as the owners of  (3) Dunkin Donuts and (4) Subway and the unidentified (5) Hospital (s). Mr. Leibovitz's  next court appearance was scheduled for March 18, 2015, in AP1.

130.   On February 10th, 2015, the PEOPLE failed to comply with the Court's January 20th, 2015 order. The PEOPLE's intentional failure put Mr. Leibovitz's evidence at risk and prejudicing his defense.

## D.   Complaint 2014-39042

131.   On March 13, 2015, after not hearing once from Sergeant Busby, Mr. Leibovitz placed a call to Queens South.

132.     Mr. Leibovitz spoke to SPAA Beecham and inquired the status of the investigation concerning his November 28th, 2014 complaint.

133.     SPAA Beecham informed Mr. Leibovitz that she will personally reach out to Sergeant Busby.

134.     That afternoon, Lieutenant Almonte ("Mr. Almonte") from the 107th Precinct placed a call to Mr. Leibovitz.

135.     Mr. Almonte informed Mr. Leibovitz that he will be conducting the investigation with regards to complaint 2014-39042 against Defendants ANDERSON, RYAN and DEL VILLAR.

136.     Mr. Almonte further informed Mr. Leibovitz that he tried calling Mr. Leibovitz a few times in early March.

137.     During Mr. Almonte and Mr. Leibovitz's initial discussion, Mr. Leibovitz voiced his concerns with Mr. Almonte, inquiring why the NYPD, is allowed to investigate itself and decide if the actions of its own employees are justified.

138.     Mr. Almonte didn't see that there was a conflict and informed Mr. Leibovitz that this is an established NYPD policy.

139.     From there, Mr. Almonte initiated his investigation and inquired what happened on November 19th, 2014.

140.     Wanting to save Mr. Almonte time, Mr. Leibovitz asked if he could stop by the precinct to provide him a copy of the Verified Amended Complaint that he filed with the Court.

141.     Mr. Almonte declined Mr. Leibovitz's offer.

142.     Mr. Leibovitz then questioned Mr. Almonte why he would not take a copy of the Verified Amended Complaint since all his allegations were sworn under oath and if he was lying he could arrest him for perjury.

143.     The initial conversation ended a few minutes later as a result of Mr. Leibovitz's recording device battery died.

144.     Mr. Leibovitz requested that Mr. Almonte give him a call back in a few minutes after he fixed his recording device.

145.     Later that afternoon, Mr. Leibovitz placed a call with the 107th Precinct and left a message for Mr. Almonte to call me back.

146.     On March 19th, 2015, Mr. Leibovitz placed a call to the 107th Precinct.

147.     Mr. Almonte informed Mr. Leibovitz that he tried calling him back on March 13th, 2015.

148.     Mr. Almonte further informed Mr. Leibovitz that he terminated the investigation as a result of Mr. Leibovitz stating that he didn't want the NYPD to investigate.

149.     Mr. Leibovitz then asked Mr. Almonte if he investigated Defendants RYAN, ANDERSON and DEL VILLAR and if so on what day.

150.     Mr. Almonte refused to provide Mr. Leibovitz any information and stated that it's in his report.

151.     A few minutes into the conversation, Mr. Almonte informed Mr. Leibovitz that he concluded the investigation and that the actions of the aforementioned Defendants were justified.

152.     From there Mr. Leibovitz questioned Mr. Almonte if he read the criminal complaint relating to his November 19th, 2014 arrest.

153.     Mr. Almonte responded to Mr. Leibovitz's inquiry by stating that he is not required to do so.

154.     Mr. Leibovitz then questioned Mr. Almonte how he could conduct a thorough investigation without reading the criminal complaint.

155.    Mr. Leibovitz further expressed his concerns to Mr. Almonte with regards to the vagueness of the criminal complaint.

156.    Mr. Leibovitz then inquired if Mr. Almonte knew what hospital Defendant ANDERSON went to as a result of the alleged assault.

157.    Mr. Almonte then road blocked Mr. Leibovitz by stating that the investigation is closed as a result of Mr. Leibovitz stating that he didn't want the NYPD to investigate.

158.    Mr. Leibovitz further questioned Mr. Almonte why he can't simply reopen the investigation and find out for him why in the criminal complaint not once does Defendant RYAN mention that Mr. Leibovitz was recording yet Mr. Leibovitz's phone was confiscated for evidence.

159.    Mr. Almonte refused to entertain Mr. Leibovitz's most basic and entirely reasonable request.

160.    Upon Mr. Almonte's refusal, Mr. Leibovitz questioned why Mr. Almonte would refuse and asked him if he once again had a conflict of interest since the officers were from his precinct.

161.    Mr. Almonte empathically said no.

162.    As of March 19, 2015, Mr. Almonte's investigation with regards to Mr. Leibovitz's complaint 2014-39042, was concluded with a final disposition that Defendants RYAN, ANDERSON and DEL VILLAR's actions were justified.


**March 18, 2015, AP1 Calendar**

163.    In the early morning of March 18th, 2015, Mr. Leibovitz's case was called on the AP1 calendar in front of Judge Dibiase.

164.    Prosecuting on behalf of the PEOPLE was ADA Kevin Fogerty.

21

165.     Both Mr. Leibovitz and Mr. Gargiulo were present.

166.     Judge Dibiase adjourned Mr. Leibovitz's case for April 17th, 2015.

167.     On April 8th, 2015, Mr. Leibovitz submitted a FOIL request (assigned FOIL Req # 2015-PL-3757) with the NYPD pursuant to New York State Freedom of Information Law requesting the following documents:

> a) Investigative Report conducted by Officer Almonte from the 107 Precinct in reference to Mr. Almonte's investigation with regards to Mr. Leibovitz's complaint with Internal Affairs: REPORT #2014-39042 (filed with Internal affairs on November 28, 2014)
>
> b) BRENDAN ANDERSON's (Tax Reg# 942951) Medical Report: In the Criminal Complaint (No. 2014QN068484), Deponent Ryan states that Brendan Anderson went to the Hospital for an MRI and to seek medical attention as a result of effectuating Mr. Leibovitz's arrest. I need the name of hospital (s) , name of Dr (s) , time of arrival, time of release from the hospital, who brought Mr. Anderson to the hospital and any relevant hospital information pursuant to Mr. Anderson's medical attention. How many days off did Mr. Anderson take from work (NYPD) post November 19, 2014 after the arrest of Mr. Leibovitz due to the injuries sustained as a result of Mr. Leibovitz's alleged assault.

## April 17, 2015, AP4  Calendar

168.     In the late morning of April 17th, 2015, Mr. Leibovitz's case was called on the AP4 calendar in front of the Honorable Judge Armstrong. Prosecuting on behalf of the PEOPLE was ADA Jared Scotto.   Both Mr. Leibovitz and Mr. Gargiulo were present. The following transpired:

> A. Mr. Leibovitz argued that the PEOPLE have failed to comply with the Court's January 20th, 2015 order, ordering the PEOPLE to respond to Mr. Leibovitz's Omnibus Motion by February 10th, 2015.
> B. Judge Armstrong ordered the PEOPLE to respond to Mr. Leibovitz's Omnibus Motion by April 21, 2015.

169.     On April 22th, 2015, Mr. Leibovitz finally received the PEOPLE's response to his January 5th, 2015 Omnibus Motion, five months after his arrest.   The PEOPLE's response

included the following:

    A. Bill of Particulars
    B. Defendant ANDERSON's Medical Report
    C. Back on December 2014, Defendant SWEET requested video surveillance from inside the 107th Precinct and was notified that no such video recording exists
    D. PEOPLE consent to inspection of Mr. Leibovitz's cell phone

## E.    <u>Complaint 2015-11474</u>

170.    On April 30th, 2015, Mr. Leibovitz filed a new complaint with Internal Affairs.

171.    Mr. Leibovitz's new complaint was assigned, complaint number 2015-11474 (hereinafter "Complaint 2015-11474).

172.    In the new complaint, Mr. Leibovitz expressed his following concerns:

    A. How complaint 2014-39042 was poorly handled by the NYPD;
    B. Why is the NYPD allowed to investigate itself and decide if the actions of its own employees are justified;
    C. The major conflict of interest that exists when a Sergeant or Lieutenant investigates officers from their own precinct;
    D. Mr. Leibovitz's Criminal Complaint:
        Deponent Defendant RYAN's Vagueness: Name of hospital, what metal gate, why there is no mention that Mr. Leibovitz was recording in the complaint yet his phone is confiscated for evidence;
    E. Why the NYPD Defendants and Supervisor never procured any witnesses or evidence the day of the arrest specifically video recording from bystanders when the criminal complaints specifically states Mr. Leibovitz's alleged actions caused "a large crowd to gather" ;

173.    On May 18th, 2015, Mr. Leibovitz was notified that Sergeant Smith was assigned to investigate complaint 2015-11474.

174.    That same day, Mr. Leibovitz placed a call to Sergeant Smith, (718) 969 7555. Mr. Leibovitz addressed his concerns with Sergeant Smith.

175.     On or about June 17, 23, July 21, August 11, and September 30, 2015, Mr. Leibovitz placed a call to Sergeant Smith to find out the status of Complaint 2015-11474.

176.     On August 5th, 2015, Mr. Leibovitz filed a motion to recuse the QDAO as a result of Assistant District Attorney Matthew Sweet, has by his actions, become a witness for the defense. Mr. Leibovitz plans on calling Mr. Sweet as a witness at his Criminal trial. Mr. Sweet's conflict as a witness is imputed upon the entire District Attorney's Office. Due to this conflict, recusal of Mr. Sweet and the District Attorney's Office for the Queens County is requested.

177.     On August 9th, 2015, Mr. Leibovitz filed motion requesting a contempt hearing, to hold ADA Kevin Fogerty and the QDAO in contempt of Court pursuant to N.Y. JUD. LAW § 750 for the following reasons as stated in his affidavit in part:

   a) On January 5th, 2015, I filed an Omnibus Motion with the Queens Criminal Court and served the Queens' District Attorney's Office.
   b) The Queens District Attorney's Office failed to comply with my Discovery demands.
   c) On June 25th, 2015 in Queens Criminal Court, my case was called on the AP1 calendar in front of the Honorable Judge Althea Drysdale. Prosecuting on behalf of the PEOPLE was ADA Kevin Fogarty.
   d) My legal assistant, Stephen Gargiulo, was present.
   e) While on the record, I informed the Court that the PEOPLE have not complied with my discovery demands and where playing games and prejudicing my defense.
   f) Judge Drysdale addressed the PEOPLE.
   g) ADA Fogarty stated that ADA Jared Scotto has been assigned to this case and is not at work today.
   h) On June 25th, 2015, the Honorable Judge Drysdale ordered ADA Kevin Fogarty to immediately comply with my Discovery demands and inform Mr. Scotto.
   i) ADA Fogarty acknowledged Judge Drysdale's ORDER.
   j) On July 10th, 2015, I reached out to ADA Scotto via email in good faith to inquire the status of my discovery demands.
   k) ADA Fogarty failed to inform ADA Scotto of the Court's aforementioned Order.
   l) The PEOPLE have now prejudiced my defense and are now in contempt of this court.

178.     On August 13th, 2015, Mr. Leibovitz submitted another FOIL request (assigned FOIL

Req # 2015-PL-8411)  with the NYPD pursuant to New York State Freedom of Information Law requesting the following documents:

   a) Report with regards to complaint #2014-39042, originally assigned to Sergeant Busby and transferred to Sergeant Almonte from the NYPD 107 Precinct.;
   b) Report with regards to Mr. Leibovitz's complaint against the original complaint (#2014-39042) which was assigned to Mr. Smith (718) 969 -7555.

179.     On August 31, 2015, Lieutenant Richard Mantellino, Records Access Officer from the Police Department Legal Bureau, denied FOIL request #2015-PL-8411.

180.     On September 10, 2015, Mr. Leibovitz filed a motion with the Queens Criminal Court, requesting an Order for an appointment of a private investigator and for the State of New York to incur costs for the private investigator.

181.     On September 10, 2015, ADA Scotto filed his opposition to Mr. Leibovitz's Motion to Recuse the Queens District Attorney's Office.

182.     On October 30, 2015, Mr. Leibovitz's criminal complaint was disposed of favorably.

183.     On November 12, 2015, Mr. Leibovitz placed a call to Sergeant Smith to find out the status of Complaint 2015-11474.

184.     Sergeant Smith informed Mr. Leibovitz that he concluded his investigation, approximately 3 to 4 weeks ago, and submitted his report.

185.      Sergeant Smith further stated that he didn't find any malfeasance committed by Lieutenant Almonte, Defendants DEL VILLAR, RYAN and ANDERSON.

186.      Mr. Leibovitz requested that Sergeant Smith elaborate on how he conducted the investigation.

187.     Sergeant Smith refused to discuss the investigation.

25

188.     That same day Mr. Leibovitz informed Sergeant Smith that his criminal complaint was dismissed.

189.     On November 19th, 2015, Leibovitz picked up his smart phone from the NYPD Queens Property Office.

190.     In our society, officers are expected to endure significant burdens caused by citizens' exercise of their First Amendment rights. See City of Houston v. Hill, 482 U.S. 451, 461, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."). Indeed, "[t]he freedom of individuals verbally to oppose or challenge police action without thereby  risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." Id. at 462–63, 107 S.Ct. 2502. The same restraint demanded of law enforcement officers in the face of "provocative and challenging" speech, id. at 461, 107 S.Ct. 2502 (quoting Terminiello v. Chicago, 337 U.S. 1, 4, 69 S.Ct. 894, 93 L.Ed. 1131 (1949)), must be expected when they are merely the subject of videotaping that  memorializes, without impairing, their work in public spaces.

191.     Mr. Leibovitz's video recording, in a public street and the content of his video recording, speech alleging government misconduct, lie at the center of the First Amendment. By arresting Mr. Leibovitz and seizing his smartphone, NYPD Defendants stopped Mr. Leibovitz from video recording a matter of public interest and prevented him from disseminating it to the public.

192.     Mr. Leibovitz would like to peacefully observe and record the interactions between the Community and law enforcement officials in the future; however, to do so he must risk the infliction of physical harm and the loss of his property by law enforcement or arrest.

193.     Small portable cameras, and in particular smartphones, which include integrated cameras capable of both still photography and audio and video recording, are widely used.  According to the Pew Internet & American Life Project, as of October 2014, 90% of Americans adults have a

cell phone and 64% of American adults have a smartphone.  Thus, a large portion of the public carries an audio and video devise with them at all times. [2]

194.     Members of the public are using smartphones and small portable cameras to document police activity and hold police officers accountable for their conduct.    In the last few years, several highly publicized incidents of police abuse that have occurred were recorded by such cameras.

195.     For example, in 2008, a video recording made by a witness with a portable camera of an incident between NYPD Officer Patrick Pogan and a bicyclist, Christopher Long, led in part to officer Pogan's conviction for filing a criminal complaint containing false statements and his discharge from the NYPD.  The video showed Officer Pogan moving toward Mr. Long and violently shoving Mr. Long off his bicycle, contrary to Mr. Pogan's allegation that Mr. Long knocked him down by intentionally steering his bicycle into him.  The incident and subsequent prosecution of Officer Pogan received publicity from both local and national news sources and has been viewed three million times on YouTube. [3]

196.     In another high-profile incident, a portable camera captured NYPD Deputy Inspector Anthony Bologna using pepper spray on two women during an Occupy Wall Street protest in September 2011. The video received local and national media attention, and caused significant negative publicity for the NYPD. Consequently, the NYPD disciplined Deputy Inspector Bologna, and the City declined to defend him in the civil lawsuit filed over the incident.

197.     Several other cities have faced lawsuits as a result of police interfering with individuals seeking to exercise their constitutional right to record police activity in public places.

198.     In Glik v. Cunniffe, 655 F.3d 78 (1st Cir. 2011), the City of Boston reached a settlement with Simon Glik who was wrongfully arrested and prosecuted in retaliation for recording an arrest. The settlement was reached after the United States Court of Appeals for the First Circuit held that there is a First Amendment right to record police officers performing their official duties. Also, subsequent to the First Circuit's decision, the Boston Police Department updated its

---

[2] http://www.pewinternet.org/fact-sheets/mobile-technology-fact-sheet/
[3] https://www.youtube.com/watch?v=oUkiyBVytRQ

training materials and policies to clearly state that members of the public have the right to record police officers.

199.    In Gericke v. Town of Wears *et al* [4], the Town of Weare, New Hampshire also recently settled a lawsuit stemming from Carla Gericke's arrest for attempting to record a traffic stop conducted by police officers. The town settled less than a month after the First Circuit had held that the plaintiff was exercising a clearly established First Amendment right, and, thus, affirmed the district court's denial of qualified immunity to the arresting officers. [5]

200.    The lawsuit, Willie E. King v. The City of Indianapolis *et al* ,  1:11-cv-01727, also recently settled with the City of Indianapolis settling with Mr. King weeks of King's March 10, 2014, trial date. Mr. King claimed his First Amendment rights were violated when he was arrested after using his cell phone to record police officers arresting another man, and refused to voluntarily give the officers his cell phone. The settlement was reached after the Court refused to grant Defendants summary judgment on the Monell claim that the City had a practice or custom of seizing cell phones that contain video evidence of a crime. Along with requiring the city to implement a new policy, the settlement also awarded King $200,000 in damages. As part of a settlement, the Indianapolis Metropolitan Police Department will be instituting a new policy prohibiting police officers from interfering with civilians who are recording their actions.

201.    The City of Baltimore recently settled a few lawsuits involving the Baltimore Police Department, in 2010 with Anthony Graber and in 2014 with Christopher Sharp stemming from officers' arrest and detention of members of the public who used their cell phone camera to record police activity. This is happening so often in Baltimore that in 2012, the U.S. Department of Justice sent a letter to the police reminding them that they cannot stop recordings, and most certainly cannot delete them.

---

[4] Docket number 11-CV-00231-SM
[5] http://www.shirelibertynews.com/activist-lawsuit-for-filming-cops-major-victory/

**FIRST CAUSE OF ACTION**

(Monell/ 42 U.S.C. § 1983 Claim Against Defendant
City Of New York For The Actions of the NYPD)

202.　　Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

**The NYPD's Policy, Practice and Custom of Not Respecting the Right of Individuals to Record Police Activity and its Failure to Train Its Officers to Respect this Right**

203.　　By reason of the foregoing, Defendant CITY deprived Plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the United States and secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the First, Fourth and Fourteenth Amendments to the United States Constitution to be free from false arrest, false imprisonment, confinement, malicious prosecution and freedom of speech.

204.　　The acts complained of, were carried out by Commissioner Bratton, in his individual and official capacity as NYPD Commissioner, under pretense and color of state law with all of the actual and/or apparent authority attendant thereto, pursuant to the customs, usages, practices, procedures, and the rules of the state of New York.

205.　　Commissioner Bratton is the final policymaker for the NYPD.

206.　　As Debra Goodman's lawyer, Norman Siegel, has pleaded in Debra Goodman v. The City of New York *et al* , 14 CV- 05261,  Commissioner Bratton has failed to remove the unconstitutional policy, practice and custom of NYPD officers failing to respect the First, Fourth and Fourteenth Amendment rights of individual who, without interfering with police activity, are recording or attempting to record police officers performing their official duties in public.

207.　　The NYPD Patrol Guide, Section 208-03, dictates that " Processing procedures for

29

arrests, documentation of strip searches – Additional Data Observers at the Scene of the Police Incidents, dictates that "As a rule, when a police officer stops, detains, or arrests a person in a public area, persons who happen to be in or are attached to the area are naturally in position to and are allowed to observe the police officer's actions. This right to observe is, of course, limited by reasons of safety to all concerned, and as long as there is no substantive violation of law. The following guidelines should be utilized by members of the service whenever the above situation exists:

> a. A person remaining in the vicinity of a stop or arrest shall not be subject to arrest for Obstructing Governmental Administration (Penal Law section 195.05), unless the officer has probable cause to believe the person(s) is obstructing governmental administration.
> b. None of the following constitutes probable cause for arrest or detention of an onlooker unless the safety of officers or other persons is directly endangered or the officer reasonably believes they are endangered or the law is otherwise violated: (1) Speech alone, even though crude and vulgar (2) Requesting and making notes of shield numbers or names of members of the service (3) Taking photographs, videotapes, or tape recordings (4) Remaining in the vicinity of the stop or arrest
> c. Whenever an onlooker is arrested or taken into custody, the arresting officer shall request the patrol supervisor to the scene, or if unavailable, report the action to the supervisor where the person is taken

208.    Despite this provision in the Patrol Guide, numerous NYPD officers have harassed, intimidated, assaulted, and arrested, threatened to arrest, and otherwise interfered with individuals who, without interfering with police activity, are attempting to record police activity. High-level NYPD officials, including the former and current Commissioners, are or should be aware of such repeated violations. Upon information and belief, the NYPD's policy, practice and custom of interfering with the rights of individuals attempting to record police activity violates the NYPD Patrol Guide.

209.    The NYPD maintains a policy, practice and custom in which officers interfere with the rights of individuals who, without interfering with police activity, are recording or attempting to record officers performing their official duties in public. Such police interference includes arresting individuals who are recording and attempting to record police activity, threatening such individuals with arrest, and otherwise preventing or hindering such individuals' ability to record police activity. Examples include the following:

a. On Sept. 25, 2013, Debra Goodman attempted to film cops and EMS personnel interacting with a woman in a wheelchair on an Upper West Side sidewalk. Her suit alleges that the NYPD has an unconstitutional "policy, practice and custom" of arresting, threatening to arrest or otherwise interfering with people who try to film cops. A lawyer for the city said, "While we haven't yet seen this case, the NYPD's policy is clear. Bystanders are allowed to film police officers as long as they're not interfering with the officers' duties and/or police operations. People are also allowed to film public officials with the same principles in mind." [6]

b. On February 15, 2014, at the Utica Avenue subway stop in Brooklyn, an NYPD member harassed and arrested Shawn Thomas for recording police activity and a member of the NYPD deleted Mr. Thomas's video of the incident. More specifically, for over five minutes, from a distance of approximately 30 feet away, Mr. Thomas was using his small camera to record an NYPD member and a subject who had been detained. Mr. Thomas did not interact with the NYPD officer or the subject. Then officer Rojas, shield # 23404, a second NYPD member, entered the subway station and noticed that Mr. Thomas was recording. Officer Rojas took out his own cell phone, walked the approximately 30 feet to Mr. Thomas, and stuck his phone inches away from Mr. Thomas's face. After a tense conversation during which officer Rojas threatened to arrest Mr. Thomas, officer Rojas twisted Mr. Thomas's hand behind his back, so that Mr. Thomas could no longer record him, and, upon information an belief, turned off Mr. Thomas's camera. After being walked out of the subway station, Mr. Thomas attempted to record officer Rojas with his Blackberry, which he had in addition to his camera. Officer Rojas forcefully told Mr. Thomas to put the Blackberry away. Then officer Rojas threw Mr. Thomas to the ground, got on Mr. Thomas's back, slammed his head into the ground and subsequently arrested Mr. Thomas. Mr. Thomas was in custody for approximately 23 hours. When Mr. Thomas picked up his camera after he was released he noticed that the two videos of the incident were deleted from his camera. Mr. Thomas however was able to recover

---

[6]       http://www.nydailynews.com/news/national/retired-legal-secretary-files-suit-alleging-nypd-violates-amendment-arresting-citizens-filming-article-1.1868030

the videos using a data recovery program. Mr. Thomas posted a video comprised predominantly of the recovered footage on YouTube. The incident has been discussed in at least on New York newspaper and on blogs.

c.   According to a lawsuit filed in the Eastern District of New York, on June 5th 2012, Hadiyah Charles was arrested for using her smartphone to record two NYPD officers as they questioned and frisked three young men. On that day, in the Bedford Stuyvesant neighborhood in Brooklyn, when Ms. Charles saw the officers questioning and frisking the men she approached them and asked what was happening. One of the officers replied that it was "police business". Subsequently, one of the officers asked Ms. Charles to step away from the scene. Ms. Charles complied with the request and stepped back and began recording the incident with her smartphone. Even though Ms. Charles was already a reasonable distance away, one of the officers tried to stop her form recording by repeatedly asking her to step further away.  At no time was Ms. Charles interfering with the police officers' actions.  After recording for a short time one of the officers shoved Ms. Charles.  Ms. Charles told the supervising officer that she wished to filed a formal complaint. In response, Ms. Charles was handcuffed and placed in the police van. Ms. Charles field a lawsuit on December 17, 2012 that includes a claim for violation of her First Amendment rights that is currently pending in the United States District Court for the Eastern District of New York.  This incident has also been reported in at least on New York newspaper and on blogs.

d.   On or about August 13, 2013 in Brooklyn Yosef Hershkop took a picture with his cell phone of a parked car that an NYPD member was ticketing. Mr. Hershkop was at least ten feet away from the officer and car. The officer aggressively waived her radio at Mr. Hershkop and told him to delete the picture in front of her.  Fearing that he would be arrested, Mr. Hershkop complied with this order and deleted the picture.

e.        Christina Gonzalez and Matthew Swaye have been arrested and threatened with arrest multiple times for recording police officers with their cell phones. For example, on or about May 16th, 2013 Ms. Gonzalez and Mr. Swaye were on the 145th Street Bridge that connects Harlem and the Bronx.  Both Ms. Gonzalez and Mr. Swaye were recording NYPD officers while they were performing a "vehicle safety check." Ms. Gonzalez asked the NYPD officers questions about what they were doing, which

prompted an NYPD member to ask Ms. Gonzalez's to move away and ask for her identification. When she refused to give her identification an NYPD officer knocked the cell phone out of her hand and arrested her. The officers also threw Mr. Swaye to the ground and took his phone. Ms. Gonzalez and Mr. Swaye were in custody for approximately 25 hours. When Ms. Gonzalez picked up her phone after she was released one of the memory cards in the phone was missing; however, it was not the memory card that contained the video of the incident. When Mr. Swaye picked up his phone after he was released, the video of the incident was deleted from his phone. Video footage of this incident is posted on YouTube and the incident was covered on numerous blogs. In addition, on or about July 31, 2012 on 146th and St Nicholas Avenue in Manhattan Ms. Gonzalez was arrested by an NYPD officer for recording him. However, Ms. Gonzalez was released after his superior told him that Ms. Gonzalez was not violating any laws by recording. Video footage of this incident is posted on YouTube.

f.  On or about March 13, 2013 in the South Bronx Ed Garcia Conde, a community activist, was arrested and given a summons for using his cell phone to record an NYPD member questioning his friend. Mr. Conde was with a group of volunteers from the Bronx Documentary Center, a non-profit organization, when an NYPD sergeant approached them.  One member of the group was carrying a broken beer bottle to the trash, sealed in a plastic bag and in a cup to capture the liquid from spilling, and the sergeant accused them of having an open container of alcohol. Mr. Conde began to record the sergeant's questioning of another volunteer.  After approximately 15 seconds of recording the sergeant told Mr. Conde to put the camera down.  Mr. Conde told the sergeant it was his legal right to record, at which point the sergeant stormed towards Mr. Conde's video was posted on YouTube, and the incident was discussed on several blogs.

g.  On or about September 7th, 203 Diego Ibanez was in a subway station attempting to record NYPD members and two teenagers they were arresting. Mr. Ibanez was at least 10 feet away from the officers and teenagers, and did not interfere or interact with the arrested teenagers or the NYPD. Just after Mr. Ibanez started recording, NYPD members walked over to him, told him he couldn't stand where he was standing and

that he had to go upstairs, out of the subway stations. Mr. Ibanez asserted that he had the right to record and that he would walk to another spot and record. As he was walking away two NYPD officers came up to him from behind and cuffed him. The NYPD members moved Mr. Ibanez next to the two arrested teenagers who he had been attempting to record. One officer said he would make Mr. Ibanez a deal such that if Mr. Ibanez erased the video he would not be sent to jail. Mr. Ibanez agreed. Upon information and belief the officer attempted to erase the video, but he did not erase the video correctly; thus, Mr. Ibanez was in custody, one of the officers said in words or effect, "This will teach you a lesson. The next time an officer tells you to stop filming what are you gonna do?" Mr. Ibanez responded that he will stop recording. Mr. Ibanez received a Desk Appearance Ticket for disorderly conduct. This incident was discussed on at least one blog.

h. In May of 2013 an unidentified person was recording two NYPD members arresting an individual in a Harlem subway station. The person was recording from a reasonable distance and was not interacting or interfering with the arrest. While the two NYPD members were placing the handcuffs on the arrestee approximately two dozen NYPD members arrived in the subway station. One of those NYPD members stopped the person from recording- he walked the person recording out of the subway station repeatedly saying "come on lets go," while the person recording repeatedly asked why he couldn't stand where he was. The incident was discussed on at least one blog.

210.    The violation of Plaintiff's rights was a direct result of the deficiency in the training and supervision of Defendants RYAN, ANDERSON and DEL VILLAR. Among other deficiencies, they were insufficiently trained to how to respect the rights of individuals attempting to record police officers performing their official duties, as required by the NYPD Patrol Guide. Upon information and belief, the current training for NYPD officers does not include sufficient training on the circumstances under which officers must allow people who observe police activity to record it. The pattern of similar constitutional violations by untrained employees has or should have provided notice to policymaking officials.

211.    Defendant CITY's failure to train and supervise constitutes deliberate indifference to the

constitutional rights of those with whom officers come into contact, including Plaintiff. Given the prevalence of smartphones and small portable cameras, Defendant CITY and policymaking officials knew to a moral certainty that NYPD officers would come into contact with individuals attempting to record police activity in public places. Further, the situation in which a member of the public records or attempts to record NYPD officers presents the officers with a difficult choice of the sort that training will make less difficult and Defendant CITY knew or should have known that there is a history of NYPD members mishandling the situation. Further, the NYPD and Defendant CITY should have known that officers taking inappropriate actions in these situations would inevitably and frequently result in deprivations of individuals' constitutional rights.

212.    NYPD's policy, practice and custom of interfering with the rights of individuals who, without interfering with police activity, are recording or attempting to record police activity is so persistent, widespread and pervasive as to constitute a 'custom or usage' and imply the constructive knowledge or acquiescence of policymaking officials. The numerous instances of abuse, a small number of which are mentioned in paragraph 177 above, the fact that several incidents were discussed in newspapers and other blogs, and the high ranking NYPD members who received letters complaining about these types of abuses demonstrates that the policymakers were aware, or at a minimum should have been aware, of their subordinates' unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions. This practice and custom of NYPD members violating the constitutional rights of individuals recording or attempting to record NYPD officers is so persistent, widespread, and pervasive and the need for corrective action is obvious, that the supervising policymakers' failure to take action gives rise to inference of their deliberate indifference, and their inaction constitutes a deliberate choice. Further, these policymaking officials' deliberate indifference to the constitutional deprivations caused by subordinate and their acquiescence may be properly thought of as a City policy, practice or custom.

213.    Defendant CITY, by and through its policymakers and agents, condoned, permitted, encouraged and/ or ratified NYPD policies, practices and / or customs that permitted NYPD officers to recklessly disregard the rights of individuals who were recording or attempting to record police officers performing their official duties in public.

214.    Defendant CITY by and through its agents acted with deliberate indifference to the rights of individuals with whom their employees were known to come into contact, including Plaintiff.

215.    The policies, practice and /or customs served to ratify or tacitly authorize the unconstitutional actions of the employees and agents of Defendant CITY, caused the Plaintiff to suffer constitutional violations and were the moving force behind said deprivations.

216.    Defendant CITY failed to train and supervise its officials, employees and agents, including Defendants ANDERSON, RYAN and DEL VILLAR, regarding how to respect the rights of individuals attempting to record police officers performing their official duties so as to prevent the false arrest and false imprisonment of Plaintiff, which resulted in the violation of his rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

217.    Defendant CITY's failure to train and supervise amounts to deliberate indifference to the rights of person with whom Defendants ANDERSON, RYAN and DEL VILLAR came into contact, including Plaintiff.

218.    As a result of Defendants ANDERSON, RYAN and DEL VILLAR's impermissible conduct, the Plaintiff was injured and harmed. Accordingly, the Plaintiff demands judgment against Defendants CITY in a sum of money to be determined at trial.

## SECOND CAUSE OF ACTION

(Monell/ 42 U.S.C. § 1983 Claim Against Defendant
City Of New York For The Actions of the NYPD)

219.    Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

## The NYPD's Policy, Practice and Custom:  THE BLUE WALL

220.     By reason of the foregoing, Commissioner Bratton and CITY deprived Plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the United States and secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourteenth Amendment to the United States Constitution.

221.     The acts complained of, were carried out by Commissioner Bratton, in his individual and official capacity as NYPD Commissioner, under pretense and color of state law with all of the actual and/or apparent authority attendant thereto, pursuant to the customs, usages, practices, procedures, and the rules of the state of New York.

222.     Commissioner Bratton is the final policymaker for the NYPD.

223.     The NYPD maintains a policy, practice and custom in which the NYPD is allowed to investigate itself and decide if the actions of its own employees are justified. *At no point* in history has this policy ever brought the truth to light and  any form of justice to the victims.

224.     The violation of Plaintiff's rights was a direct result of the deficiency in the training and supervision of Sergeant Smith, Lieutenant Almonte, Defendants RYAN, ANDERSON and DEL VILLAR.    Both Sergeant Smith and Lieutenant Almonte failed to conduct thorough investigations with deliberate indifference to seek the truth, never attempted to  procure any witnesses, speak to any witnesses or preserve any evidence (crowd's video recording).

225.     As a result of Commissioner Bratton, Sergeant Smith, Lieutenant Almonte and Defendants ANDERSON, RYAN, DEL VILLAR's impermissible conduct, the Plaintiff was injured and harmed. Accordingly, the Plaintiff demands judgment against Defendants CITY in a sum of money to be determined at trial.

## **THIRD CAUSE OF ACTION**

(Violation of Plaintiff's First and Fourteenth Amendments
to the United States Constitution
Against Police Officers Brendan Anderson, Christopher Ryan and Del Villar)

226.     Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

227.     Plaintiff has an interest protected by the First Amendment. Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR's actions were motivated or substantially caused by Plaintiff's exercise of his First Amendment right and effectively chilled the exercise of this right.

228.     Defendants have deprived, and will continue to deprive, Plaintiff of his rights under the First Amendment to the United States Constitution, which is incorporated through the Fourteenth Amendment. Defendants' intimidating demands and unlawful direct orders (made by Defendants, their officers or agents, or those working in concert with them) that Plaintiff can't record interactions between public officials in a public place is the cause-in-fact of the constitutional violations.

229.     Defendants ANDERSON, RYAN and DEL VILLAR were at all relevant times agents, servants, and employees acting within the scope of their employment by the City of New York and the NYPD. The City of New York and the NYPD are responsible for Defendants ANDERSON, RYAN and DEL VILLAR's conduct.

230.     As a result of NYPD Defendants and Defendant CITY's impermissible conduct, the Plaintiff was injured and harmed. Accordingly, the Plaintiff demands judgment against Defendant CITY and NYPD Defendants in a sum of money to be determined at trial.

## FOURTH CAUSE OF ACTION

### DEPRIVATION OF RIGHTS UNDER THE FOURTH AMENDMENT AND 42 U.S.C. § 1983 FALSE IMPRISONMENT AND FALSE ARREST

(Against Police Officers Brendan Anderson, Christopher Ryan and Del Villar)

231.     Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

232.     By reason of the foregoing, and by arresting the Plaintiff without probable cause, Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR deprived the Plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States and secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth Amendment to the United States Constitution to be free from false arrest and false imprisonment.

233.     The wrongful, unjustifiable, and unlawful apprehension, arrest, detention and imprisonment of the Plaintiff were carried out without Plaintiff's consent, and without probable cause or reasonable suspicion.

234.     The forcible stop, arrest, detention and imprisonment by Defendants ANDERSON, RYAN and DEL VILLAR, acted under pretense and color of state law and in their individual and official capacity and within the scope of their employment respectively as NYPD police officers.  Defendants ANDERSON, RYAN and DEL VILLAR's acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Defendants ANDERSON, RYAN and DEL VILLAR acted willfully, knowingly, and with the specific intent to deprive the Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment to the United States Constitution.

235.     As a direct and proximate result of the misconduct and abuse of authority detailed above,

the Plaintiff sustained the damages hereinbefore alleged.

236.     As a result of Defendants ANDERSON, RYAN and DEL VILLAR's impermissible conduct, the Plaintiff was injured and harmed. Accordingly, the Plaintiff demands judgment against Defendants ANDERSON, RYAN and DEL VILLAR in a sum of money to be determined at trial.

## FIFTH CAUSE OF ACTION

(42 U.S.C. § 1983; Denial of Due Process
Under the Fifth and Fourteenth Amendments;
Malicious Prosecution and Deprivation of Liberty
Under the Fourth and Fourteenth Amendments;
Defendants Brendan Anderson, Christopher Ryan
and Del Villar)

237.     Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

238.     On November 19th, 2014, NYPD Defendants ANDERSON, RYAN and DEL VILLAR working in concert knowingly and willingly manufactured, a false criminal complaint accusing Plaintiff of assault, obstructing governmental administration and resisting arrest under New York law.

239.     NYPD Defendants knew that the statements would and caused the statement to be relied upon by the QDAO to formally initiate his prosecution.

240.     NYPD Defendants criminal complaint caused criminal charges to be brought against Plaintiff without probable cause and with malice. NYPD Defendants played an active role in the prosecution by knowingly providing false information and intentionally withholding information from the QDAO. The criminal charges were disposed of favorably to Plaintiff on October 30,

2015.

241.     The wrongful, unjustifiable, and unlawful apprehensions, arrest, detention, imprisonment, and prosecution of Plaintiff were carried out without Plaintiff's consent, and without probable cause or reasonable suspicion.

242.     The aforesaid conduct, which NYPD Defendants committed in concert with and in aid of each other, operated to deprive Plaintiff of his rights under the Constitution and the Laws of the United States:

    a.  Not to be arrested, prosecuted, detained, based on false, fabricated, manufactured and misleading statements in violation of the Due Process Clause of the Fifth and Fourteenth Amendments to the United States Constitution;

    b.  Not to be deprived of his liberty absent probable cause to believe he has committed a crime, in violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution; and

    c.  To timely disclosure of all material evidence favorable to the defense pursuant to Brady v. Maryland, 373 U.S. 83 (1963), and the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution.

243.     The foregoing violations of Plaintiff's federal constitutional rights by NYPD Defendants caused the initiation and continuation of Plaintiff's criminal prosecution, his loss of liberty, and his other injuries and damages.

244.     The foregoing violations of Plaintiff's rights amounted to Constitutional torts.

245.     The acts complained of, were carried out by NYPD Defendants, in their individual and official capacity as NYPD police officers, under pretense and color of state law with all of the

actual and/or apparent authority attendant thereto, pursuant to the customs, usages, practices, procedures, and the rules of the state of New York. NYPD Defendants acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their power.

246.     NYPD Defendants committed the foregoing violation of Plaintiff's rights knowingly, intentionally, willfully, recklessly and with deliberate indifference to Plaintiff's constitutional rights to or to the effect of such misconduct upon Plaintiff's constitutional rights.

247.     By reason of the foregoing, NYPD Defendants are liable to Plaintiff, pursuant to 42 U.S.C. § 1983, for compensatory and for punitive damages.

## SIXTH CAUSE OF ACTION

### DEPRIVATION OF RIGHTS UNDER THE FOURTEENTH AMENDMENT AND 42 U.S.C. § 1983

(Against Police Officers Brendan Anderson, Christopher Ryan and Del Villar)

248.     Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

249.     By reason of the foregoing, Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR deprived the Plaintiff. of rights, remedies, privileges and immunities guaranteed to every citizen of the United States and secured by 42 U.S.C  § 1983, including, but not limited to, rights guaranteed by the Fourteenth Amendment to the United States Constitution to be free from malicious abuse of process.

250.     The acts complained of, were carried out by Defendants ANDERSON, RYAN and DEL VILLAR, in their individual and official capacity, as police officers, under pretense and color of

state law with all of the actual and/or apparent authority attendant thereto, pursuant to the customs, policies, usages, practices, procedures, and the rules of the NYPD.

251.    Acting in concert, Defendants ANDERSON, RYAN and DEL VILLAR filed a criminal complaint against the Plaintiff.  Defendants ANDERSON, RYAN and DEL VILLAR employed criminal process against the Plaintiff by having him arraigned on charges of

      A.  One count of Assault in the second degree;
      B.  One count  of  Obstructing Governmental Administration in the
         second  degree and with;
      C.  One count of Resisting Arrest.

252.    Defendants ANDERSON, RYAN and DEL VILLAR did this to harm the Plaintiff, as retribution when the Plaintiff informed them, that he was exercising his constitutionally protected speech by recording them, the proceeding was  instituted  to interfere with, and chill, the exercise of free speech and association, and intentionally, maliciously with a deliberate indifference.

253.    Due process forbids the use of legal process for a wrongful purpose, procedural due process violations include deprivations "of liberty by a distortion and corruption of the processes of law".

254.    As a result of Defendants ANDERSON, RYAN and DEL VILLAR's impermissible conduct, the Plaintiff was injured and harmed. Accordingly, the Plaintiff demands judgment against Defendants ANDERSON, RYAN and DEL VILLAR in a sum of money to be determined at trial.

## SEVENTH CAUSE OF ACTION

### *RESPONDEAT SUPERIOR* LIABITLITY
### CITY OF NEW YORK
### FOR STATE LAW VIOLATIONS
### COMMON LAW CLAIM

255.     Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

256.     NYPD Defendants that participated in maliciously prosecuting, detaining and arresting the Plaintiff, and who were the policymakers and committed the other wrongs against the Plaintiff described herein, whether named individual herein or not, were employees of Defendant CITY at all relevant times, Commisioner Bratton, Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR, were acting within the scope of their employment and on behalf of  Defendant CITY.

257.     Defendant CITY is responsible for the torts of "City Defendants" and for the consequences of their actions generally, under the theory of common law doctrine of *respondeat superior.*

258.     As a result of  NYPD Defendants and Defendant CITY's impermissible conduct, the Plaintiff was injured and harmed. Accordingly, the Plaintiff demands judgment against Defendant CITY in a sum of money to be determined at trial.

## EIGHTH CAUSE OF ACTION

(Negligent Hiring, Training and Supervision Under State Law; RESPONDEAT *SUPERIOR* Defendant City of New York)

259.     Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

260.    By virtue of the foregoing , Defendant City of New York is liable to plaintiff because of its intentional, deliberately indifferent, careless, reckless, and/or negligent failure to adequately hire, train, supervise, and discipline its agents, servants and/or employees employed by the NYPD with regard to their aforementioned duties.


## NINTH CAUSE OF ACTION

Violation of Article I, Section 8 of the New York Constitution
(Against Police Officers Brendan Anderson, Christopher Ryan and Del Villar)

---

261.    Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

262.    Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and  DEL VILLAR's actions described herein chill reasonable persons from engaging in activity that is protected by Article I Section 8 to the New York State Constitution.

263.    Defendants ANDERSON, RYAN and DEL VILLAR have deprived, and will continue to deprive, Plaintiff of his rights under Article I Section 8 to the New York Constitution. Defendants ANDERSON, RYAN and DEL VILLAR's intimidating demands and unlawful direct orders that Plaintiff can't record interactions between public officials in a public place is the cause-in-fact of the constitutional violations.

264.    Upon information and belief, unless restrained by this court, Defendants will continue to enforce their actions of ordering Etan Leibovitz that he can't document and record their searches.

265.     As a result of NYPD Defendants and Defendant CITY's impermissible conduct, the Plaintiff was injured and harmed. Accordingly, the Plaintiff demands judgment against Defendant CITY and NYPD Defendants in a sum of money to be determined at trial.

## TENTH CAUSE OF ACTION

### FALSE IMPRISONMENT AND FALSE ARREST
### UNDER NEW YORK STATE LAW

(Against Police Officers Brendan Anderson, Christopher Ryan and Del Villar)

266.     Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

267.     As a result of the aforesaid conduct by Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR, the Plaintiff was unlawfully detained and confined.

268.     Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR intentionally confined the Plaintiff.

269.     The Plaintiff was at all times consciously aware of his confinement by Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR.

270.     At no point throughout the Plaintiff's unlawful detention and confinement by Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR did the Plaintiff consent to said confinement.

271.     At no point throughout the Plaintiff's unlawful detention and confinement by Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR were the actions of

Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR otherwise privileged.

272.     As a result of Defendants ANDERSON, RYAN and DEL VILLAR's impermissible conduct, the Plaintiff was injured and harmed. Accordingly, the Plaintiff demands judgment against Defendants ANDERSON, RYAN and DEL VILLAR in a sum of money to be determined at trial.

### ELEVENTH CAUSE OF ACTION

(Malicious Prosecution under State Law;
Against Police Officers Brendan Anderson,
Christopher Ryan and Del Villar))

273.     Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

274.     Plaintiff advances this claim against Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR.

275.     By virtue of the foregoing, Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR, acting in concert with each other and with additional persons for whose acts they are liable, caused the initiation and continuation of, criminal proceedings against Plaintiff.

276.     The criminal proceedings "terminated" in Plaintiff's favor on October 30, 2015.

277.     There was no probable cause for the commencement or the continuation of the criminal proceedings.

278.     Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR acted with actual malice.

279.     Defendant City of New York is liable under the principle of respondeat superior.

280.     As a result of Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR impermissible conduct, Plaintiff was injured and harmed.

281.     Accordingly, Plaintiff demands judgment against Defendants CITY, BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR in a sum of money to be determined at trial.


## TWELFTH CAUSE OF ACTION

### ASSAULT AND BATTERY
### COMMON LAW CLAIM

(Against Police Officers Brendan Anderson, Christopher Ryan and Del Villar)

282.     Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

283.     By the conduct and actions described above, Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR inflicted the torts of assault and battery upon Plaintiff.  The acts and conduct of Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR were the direct and proximate cause of injury and damage to Plaintiff and violated Plaintiff's statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

284.     Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR's acts constituted an assault upon Plaintiff  in that Defendants  BRENDAN ANDERSON,

48

CHRISTOPHER RYAN and DEL VILLAR intentionally attempted to injure Plaintiff or commit a battery upon him, and further that Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR acts represented a grievance affront to Plaintiff.

285.    Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR's acts constituted a battery upon Plaintiff in that the above described bodily contact was intentional, unauthorized, and grossly offensive in nature.

286.    The actions of Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR were intentional, reckless and unwarranted and without any just cause or provocation, and Defendants BRENDAN ANDERSON, CHRISTOPHER RYAN and DEL VILLAR knew or should have known that their actions were without the consent of Plaintiff.

287.    The injuries sustained by Plaintiff were caused wholly and solely of the conduct described, and Plaintiff did not contribute thereto.

288.    As a direct and proximate result of the foregoing, Plaintiff was subjected to great physical and emotional pain and humiliation and was otherwise damaged and injured.

289.    As a result of Defendants ANDERSON, RYAN and DEL VILLAR's impermissible conduct, the Plaintiff was injured and harmed. Accordingly, the Plaintiff demands judgment against Defendants ANDERSON, RYAN and DEL VILLAR in a sum of money to be determined at trial.

## THIRTEENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### COMMON LAW CLAIM

(Against City and Police Officers Brendan Anderson, Christopher Ryan and Del Villar)

290.     Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

291.     NYPD Defendants conduct, in assaulting and battering Plaintiff on November 19th , 2014, and signing a false Felony Criminal Complaint was careless and negligent as to the emotional health of Plaintiff and caused severe emotional distress to Plaintiff.

292.     The acts and conduct of NYPD Defendants was the direct and proximate cause of injury and damage to Plaintiff and violated his statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

293.     Defendant City is liable under the principle of *respondeat superior*.

294.     As a result of NYPD Defendants impermissible conduct, Plaintiff was injured and harmed. Accordingly, Plaintiff demands judgment against NYPD Defendant in a sum of money to be determined at trial.

## FOURTEENTH CLAIM FOR RELIEF

### MALICIOUS ABUSE OF PROCESS

(Against Police Officers Brendan Anderson, Christopher Ryan and Del Villar)

295.     Plaintiff repeats, reiterates, and re-alleges each and every averment contained in the above paragraphs with the same force and effect as if fully set forth herein.

296.     Acting in concert, Defendants ANDERSON, RYAN and DEL VILLAR filed a criminal
complaint against the Plaintiff. Defendants ANDERSON, RYAN and DEL VILLAR employed
criminal process against the Plaintiff by having him arraigned on charges of

      A.  One count of Assault in the second degree;
      B.  One count of Obstructing Governmental Administration
         in the second degree and with;
      C.  One count of Resisting Arrest.

297.     Defendants ANDERSON, RYAN and DEL VILLAR did this to harm the Plaintiff, as
retribution when the Plaintiff informed them , that he was exercising his constitutionally
protected speech by recording them, the proceeding was  instituted  to interfere with, and chill,
the exercise of free speech and association, and intentionally, maliciously with a deliberate
indifference.

298.     Due process forbids the use of legal process for a wrongful purpose, procedural due
process violations include deprivations "of liberty by a distortion and corruption of the processes
of law".

299.     As a result of Defendants ANDERSON, RYAN and DEL VILLAR's impermissible
conduct, the Plaintiff was injured and harmed. Accordingly, the Plaintiff demands judgment
against Defendants ANDERSON, RYAN and DEL VILLAR in a sum of money to be
determined at trial.

## DAMAGES DEMAND

**WHEREFORE,** Plaintiff respectfully requests that the Court grant the following relief jointly and severally against defendants:

### *DECLARATORY RELIEF*

A.    A declaratory judgment that the NYPD's policy, practice and custom of interfering with the right of individuals to film, photograph, videotape, or record (collectively, "record") NYPD members performing their official duties in public places is unconstitutional. In particular, Defendants Ryan, Anderson and Del Villar violated the Plaintiff's rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983, and Article I, Section 8 of the New York State Constitution, and violated the laws of the State of New York, and that Mr. Leibovitz's attempted recording was an act of speech protected by the First and Fourteenth Amendments to the United States Constitution, and Article I, Section 8 of the New York Constitution;

B.    A declaratory judgment that the NYPD's Blue Wall policy, practice and custom of investigating itself and deciding if the actions of its own employees are justified is unconstitutional;

### *INJUNCTIVE RELIEF*

C.   Enjoin Defendant CITY through their agents, servants, employees, and all those in active concert or participation with them from retaliating against or otherwise punishing Plaintiff or anyone who, without interfering with police activity, records or attempts to record police officers performing official duties in public;

D.   Enjoin Defendant CITY through their agents, servants, employees, and all those in active concert or participation with them from enforcing the Blue Wall Policy;

E. Retain jurisdiction in this case until the unlawful conditions, practices, policies, acts, and omissions complained of herein no longer exists and this court is satisfied that they will not recur;

## *DEMAND FOR MONETARY DAMAGES*

F. For compensatory damages of not less than $1.5 million;

G. For punitive damages against the individual Defendants of $3 million;

H. Mr. Leibovitz demands a jury trial with respect to all claims which may be so tried;

I. Award Mr. Leibovitz reasonable pro se fees and costs under 42. U.S.C.§ 1988 and to the inherent powers of this Court;

J. For pre-judgment interest as allowed by law; and

K. Award such other and further relief as the Court deems just and proper.

Dated: Queens, New York

     May 16th , 2016

Etan Leibovitz
Pro Se
83-19 141st
Briarwood, NY 11435
(718) 805- 1941

## Statement of Verification

Etan Leibovitz, being duly sworn deposes and says:

I am the plaintiff in the above-entitled action. I have read the foregoing complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

_____

Plaintiff

Sworn to before me this

___1 6___ day of ___May___ 2016

_____
Notary Public

MARIA GOFF
Notary Public, State Of New York
No. 03GO6333667
Qualified in Queens County
Commission Expires November 30,



FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ MAY 20 2016 ★

BROOKLYN OFFICE

Morgan GNRC NY 11232
WED 18 MAY 2016 20:38 PM

United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, N.Y. 11261



USMS

83-19 141 st #207
Briarwood, N.Y. 11435